**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 05-21182-CIV-TORRES

CONSENT CASE

TRIPLECHECK, INC., d/b/a SEA TOW MIAMI,

    Plaintiff,

vs.

CREOLE YACHT CHARTERS LIMITED, in personam, and M/Y ANACONDA S, British Registry No. 725893, its engines, equipment, boats, machinery, furnishings, apparel and appurtenances, etc. in rem,

    Defendants
_____/

## OMNIBUS ORDER

This cause comes before the Court on Defendant's Motion for Leave to Disclose Expert Witnesses, [D.E. 71], Plaintiff's Motion to Stay Litigation and Compel Arbitration [D.E. 72], Defendant's Motion to Strike Affidavit of Timothy O'Hare [D.E. 74] and Defendant's Motion for Leave to File Counterclaim [D.E. 81]. The Court held a hearing on these matters on December 1, 2006, and the motions, being fully briefed, are now ripe for disposition.

Accordingly, for the reasons stated at the hearing and for the purpose of memorializing the Court's rulings, it is **ORDERED AND ADJUDGED** as follows:

1.      Plaintiff's Motion to Stay Litigation and to Compel Arbitration [D.E. 72] is **DENIED**. Plaintiff has waived its right to arbitrate by failing to invoke it sooner. "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. West of England Ship Owners Mut. Prot. & Indem. Assoc.*, 62 F.3d 1356, 1366 (11th Cir. 1995). Prejudice is determined by considering the length of delay in demanding arbitration and the expenses incurred in litigation. *S&H Contractors v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990).

This case has been pending since the Complaint was filed on April 29, 2005. Furthermore, interrogatories and requests for production have been served and answered, four depositions have been taken, mediation has been completed and a motion for summary judgment was ruled on by the Court on March 15, 2006. Plaintiff also represented to the Court at the scheduling conference held on August 14, 2006, that it wished to proceed to trial. For all of the foregoing reasons, the Court finds that Plaintiff has waived its right to arbitrate. *See also Stone v. E.F. Hutton & Co.*, 898 F.2D 1542, 1543-44 (11th Cir. 1990) (delay of one and one-half years in seeking to compel arbitration constituted a waiver; during that time, extensive discovery had been conducted, the discovery cutoff date passed, and trial preparation was underway).

Plaintiff's primary argument against a waiver is not from general disagreement with this body of law. Rather, Plaintiff argues that the right to arbitrate did not accrue until shortly before the pending motion was filed, when Plaintiff was able to interview a key witness in the case who supported Plaintiff's theory that the operative written contractual document in this case was entered into by Defendant's agent who could bind Defendant to that agreement and the arbitration clause contained therein. Plaintiff contends that,

prior to that point, Defendant's enforceability defense, stemming from its denial of any agency relationship, rendered the right to arbitrate uncertain.

There are several problems with this theory. First, Plaintiff has cited no caselaw that actually holds that the right to compel arbitration does not ever accrue until such particularized and specific evidence is obtained as to the enforceability or validity of an arbitration agreement. The Court has, on its own, attempted to find that authority and did not do so.

Second, the general rule is that issues going to the enforceability of a contract are matters that are for the arbitrator to decide, so long as the contract on its face requires arbitration. *E.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 637 F.2d 391 (5th Cir. 1981). The fact that there is a denial by one party as to the validity of the agreement in question does not relieve the other party of the necessity to take steps to timely initiate arbitration pursuant to its contention that an arbitration agreement existed and was enforceable. *E.g., Fremont Cake & Meal Co. v. Wilson & Co.,* 86 F. Supp. 968, 976 (D. Neb. 1949), *aff'd,* 183 F.2d 57 (8th Cir. 1950).

Third, the reason why Plaintiff may not have located any support for its unique position may be found in the text of the Federal Arbitration Act itself which precisely addresses this circumstance in section 4 of the Act, 9 U.S.C. § 4, where the statute provides that a party who refuses to arbitrate based upon a challenge to the very existence of the arbitration agreement may then demand a summary trial on that question prior to compelling arbitration. "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." And, if "the jury [or judge] find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the

court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

Accordingly, if it believed that there was an enforceable agreement that bound the Defendant here to arbitration, Plaintiff had the contractual and statutory obligation to demand timely arbitration at the inception of the dispute. That would have placed Defendant in the position of invoking section 4 of the Act to challenge the existence of a valid arbitration agreement that governed the dispute, which would have allowed the Court to decide the matter summarily before merits discovery and trial preparation were ever undertaken. *E.g., Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.,* 663 F.2d 4, 6-7 (2d Cir. 1981). That did not occur. Instead, Plaintiff did not invoke its rights in a timely manner, the case proceeded in litigation for well over one year, and the parties are now in a position where they are basically ready for trial. The fact that one particular witness to the dispute has now surfaced does not alter Plaintiff's obligation to timely invoke its contractual and statutory rights to arbitration.

Therefore, Plaintiff has forever waived its right to arbitrate this dispute and must now continue to proceed with the litigation it commenced.

2. Defendant's Motion to Strike Affidavit of Timothy O'Hare [D.E. 74] is **DENIED AS MOOT**. Given the Court's denial of Plaintiff's motion to compel arbitration, Defendant's motion to strike Mr. O'Hare's affidavit filed in support of the motion to compel arbitration is moot. Whatever procedural issues are raised by his proffered testimony at trial should be addressed at that time.

3. Defendant's Motion for Leave to File Counterclaim [D.E. 81-1] is **DENIED**. Defendant's motion is untimely given that the case has been pending since April 29, 2005, and that the parties filed their joint pretrial stipulation on April 21, 2006. Plaintiff

would be prejudiced as it would not have had notice of the parameters of the case; the pretrial stipulation provides that notice.  The Court would have to re-open discovery to allow Defendant to file a counterclaim.  Given the current procedural posture of the case and the upcoming trial, the Court is not prepared to re-open discovery at this stage.  Defendant is not precluded, however, from using the issue of the excessiveness of the bond as part of its defense to the underlying claim.

    4.    Defendant's Motion for Leave to Disclose Expert Witnesses [D.E. 71] is **GRANTED**.  In the interests of substantial justice, Defendants will be allowed to introduce the expert testimony of James McCrory and Captain William Hicks.  Although Defendant's disclosure of these experts' testimony is procedurally untimely, the Court finds in this respect that Plaintiff will not be unduly prejudiced.  The Court will allow Defendant to offer expert witness testimony to rebut any expert testimony of Plaintiff's (which may come from the testimony of Plaintiff's principal).  Furthermore, Mr. McCrory was listed on the parties' joint pretrial stipulation as a joint expert.  Plaintiff was, therefore, already aware that Mr. McCrory would testify at trial.  Although Defendant seeks to broaden the testimony that Mr. McCrory will offer at trial by having him testify regarding the cause of the vessel's submersion in addition to the appraised value of the yacht after the incident, the Court will allow Plaintiff to offer rebuttal expert testimony to eliminate any prejudice to the Plaintiff from the McCrory or Hicks testimony.  Additionally, if Plaintiff requests, Defendant shall produce these gentlemen for Plaintiff to depose them prior to trial.  Plaintiff suggested at the hearing that it would not pursue that remedy, but if it timely changes its mind prior to the start of trial Plaintiff will be able depose these experts.  Additionally, to the extent it has not already done so, Defendant shall submit to Plaintiff

no later than ten days prior to trial a complete Rule 16.k expert disclosure and summary for each of the experts Defendant intends to call at trial.

6. Based on the parties' representation that they are ready for trial, trial in this case is specially set to commence on December 20, 2006, at 9:00 a.m. The parties should contact chambers staff on Friday, December 15, 2006 to confirm the Courtroom location at the Dyer Building where the trial will be held.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 5th day of December, 2006.

_____
EDWIN G. TORRES
United States Magistrate Judge

Copies provided to:
All counsel of record